HDM:GK/GN

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

       - against -

MARIO ECHEVERRI,

          Defendant.

COMPLAINT

20-1038 M

(21 U.S.C. §§ 841, 846)

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

      KEVAL PATEL, being duly sworn, deposes and states that he is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, duly appointed according to law and acting as such.

      On or about October 29, 2020, within the Eastern District of New York, the defendant MARIO ECHEVERRI, together with others, did knowingly and intentionally attempt to possess with intent to distribute a controlled substance, which offense involved a substance containing 3,4-methylenedioxymethamphetamine (ecstasy), a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

      (Title 21, United States Code, Sections 841 and 846)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI") and have been involved in the investigation of numerous cases involving narcotics smuggling and distribution. I am familiar with the facts and circumstances set forth below from personal knowledge, my participation in the investigation, my review of the investigative file and from reports of other law enforcement officers involved in the investigation.

2. The United States Department of Homeland Security, Homeland Security Investigations ("HSI") has been investigating a drug trafficking organization ("DTO") that operates out of Amsterdam Schiphol Airport ("Schiphol") in the Netherlands. As part of that investigation, an undercover law enforcement agent (the "UC") has communicated via WhatsApp with an individual ("Individual-1")[2] who works for the DTO.

3. On or about September 6, 2020, the UC called Individual-1 via WhatsApp. During the conversation, Individual-1 told the UC, in sum and substance, that Individual-1 had 1.5 million MDMA[3] pills ready to ship from Amsterdam to New York. Individual-1 proposed sending a test run shipment of 30,000 pills from Schiphol to John F.

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware. All conversations or statements contained herein are summarized in sum and substance.

[2] The identity of Individual-1 is known to law enforcement agents.

[3] MDMA is another name for 3,4-methylenedioxymethamphetamine (ecstasy).

Kennedy International Airport in Queens, New York ("JFK Airport") in two separate containers. Individual-1 and the UC agreed that the UC would charge thirty percent of the price of the shipment to receive the drugs. Individual-1 further stated, in sum and substance, that the UC could keep 9,000 pills as payment, and that the wholesale value of the 9,000 pills was approximately $45,000, equal to approximately thirty percent of the price of the entire shipment.

4. On or about October 5, 2020, the UC called Individual-1 via WhatsApp. During the call, Individual-1 and the UC discussed the shipment, which was scheduled to arrive at JFK Airport from Schiphol the following day on KLM Royal Dutch Airlines Flight 643. The UC told Individual-1, in sum and substance, that someone was ready to pull the shipment off of the flight. Individual-1 informed the UC that he would send a picture of the package and a message concerning its location via WhatsApp.

5. On or about October 6, 2020, at approximately 1:45 p.m., Individual-1 sent the UC two pictures via WhatsApp. One of the pictures depicted an air cargo pallet numbered AKE 95330 KL. The other picture depicted a sealed white bag.

6. Later the same day, Individual-1 called the UC and stated, in sum and substance, the person in charge of loading the pills had only loaded 10,000 pills and left the other 20,000 pills behind by accident. Individual-1 apologized and stated if the UC received the 10,000 pills, Individual-1 would send 120,000 pills on the next trip.

7. KLM Royal Dutch Airlines Flight 643 arrived at JFK Airport from Schiphol later that day. Following the plane's arrival, law enforcement agents entered the rear cargo haul of the aircraft, where they discovered an air cargo pallet numbered AKE 95330. Within the air cargo pallet, law enforcement agents discovered one white nylon

burlap bag, within which were two vacuum-sealed packages containing purple pills in the shape of a grenade. Law enforcement agents tested sample pills from the shipment using the Gemini (Therno Scientific) device, and the pills tested positive for the presence of 3,4-methylenedioxymethamphetamine (ecstasy), also known as "MDMA." In total, law enforcement agents seized approximately 3.856 kilograms of pills, excluding the weight of the exterior packaging materials.

8. The UC called Individual-1 to inform Individual-1 that the UC had received the shipment. Individual-1 told the UC to hold the MDMA until instructed to turn it over. Individual-1 stated, in sum and substance, that the person who would receive the drugs would write to the UC on behalf of "El Abuelo."

9. On or about October 27, 2020, the UC received a message via WhatsApp from an individual who claimed that he/she was writing on behalf of "El Abuelo." The UC then called Individual-1. During the call, Individual-1 referred to the individual as "the Italian" and confirmed that "the Italian" was acting at Individual-1's direction. Individual-1 instructed the UC to contact "the Italian" to organize a meet, during which "the Italian" would turn over $5,000 in exchange for the things (which the UC understood referred to the MDMA). Individual-1 stated, in sum and substance, that after "the Italian" sold the MDMA, he would give the UC $10,000 more.

10. Later that day, the UC received a call via WhatsApp from phone number 631-352-9964 (the "9964 number"). The UC spoke with the caller to arrange for the pickup of the MDMA and discuss when the UC would receive payment.

11. On or about October 28, 2020, the UC called "the Italian" via WhatsApp using the 9964 number. During the call, the UC asked whether "the Italian"

would be interested in selling the pills given to the UC as payment and how much "the Italian" paid for "pastillas" (pills, in English) or "ex". "The Italian" responded that he paid "four." Based on my training and experience and conversations with the UC and other law enforcement agents, I understand "ex" to refer to ecstasy" and "four" to refer to the price of four dollars per pill.

12. On or about October 29, 2020, the UC received a call from "the Italian" via WhatsApp using the 9964 number. During the call, the UC stated, in sum and substance, that an individual ("UC-2") would be ready to meet "the Italian" at 1:00 p.m. at a gas station in Queens that has a Wendy's nearby.

13. At approximately 2:30 p.m., a man whom law enforcement agents later identified as the defendant, MARIO ECHEVERRI, arrived at the designated location in a gray KIA Forte. ECHEVERRI parked in front of UC-2's vehicle. ECHEVERRI stated, in sum and substance, that he was there on behalf of "El Abuelo" and entered the passenger side of UC-2's vehicle. UC-2 showed ECHEVERRI a white bag and said, in sum and substance, "here are the pills." ECHEVERRI grabbed the white bag, put them on his lap, and proceeded to squeeze the packages contained in the bag to discern their contents. ECHEVERRI stated, in sum and substance, "yeah, it's for parties underground and clubs." ECHEVERRI then gave UC-2 a white envelope containing $5,000 in U.S. currency. While still in the car, UC-2 told ECHEVERRI, in sum and substance, that he had more pills and asked ECHEVERRI if he could buy them. ECHEVERRI gave the UC a price of one dollar per pill. UC-2 stated, in sum and substance, that it was a horrible price. ECHEVERRI then stated, in sum and substance, that he could do $2.50 per pill.

14. MARIO ECHEVERRI subsequently insisted that UC-2 go with him to Wendy's. ECHEVERRI got out of UC-2's vehicle and got back into the gray KIA Forte. ECHEVERRI and UC-2 drove closer to the Wendy's and parked. After ECHEVERRI and UC-2 got out of their respective cars, law enforcement agents arrested ECHEVERRI. Incident to ECHEVERRI's arrest, among other things, law enforcement agents recovered a black iPhone.

15. Law enforcement agents have identified MARIO ECHEVERRI as "the Italian" who communicated with the UC. Law enforcement databases confirm that the 9964 number used by the "the Italian" is associated with ECHEVERRI. Furthermore, when law enforcement agents called the 9964 number, the black iPhone seized from ECHEVERRI incident to his arrest began ringing. Finally, the UC identified ECHEVERRI's voice as the same voice as "the Italian."

WHEREFORE, your deponent respectfully requests that the defendant MARIO ECHEVERRI be dealt with according to law.

_____
KEVAL PATEL
Special Agent, United States Department of
Homeland Security, Homeland Security
Investigations

Sworn to me through the transmission of this
Affidavit by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 41(d)(3) and 4.1, this
___30th_____ day of October, 2020   by telephone

_____
THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK